# Johnson *v.* Murphy, Agnew & Co.

### *Bill in Equity for Cancellation of Mortgage as Cloud on Title.*

1. *Homestead exemption; governed by what law.*—The right to claim a homestead exemption, as against a mortgage dated March 31, 1873, is to be determined by the constitution of 1868 alone.

2. *Cancellation of mortgage, on ground of fraud.*—If a creditor procures the execution by his debtor of a mortgage for past advances, by promising to make additional advances during the current year, the breach of this agreement on his part, although it might support an action at law, or a plea of set-off to the extent of the injury actually sustained, will not support a bill in equity for the cancellation of the mortgage on the ground of fraud.

3. *Misjoinder of complainants.*—When several persons unite as complainants in a bill in equity, all must be entitled to relief, or none can obtain it.

4. *Cloud on title; what conveyance is.*—As to a mortgage on lands, to which are signed the names of the four persons to whom they belonged as joint tenants, or tenants in common, and a certificate of acknowledgment in proper form is appended, while the names were in fact all signed by one of them only, without written authority from the others, the court is "not prepared to say it does not create such a cloud on the title as that equity would entertain a bill to remove it," at the suit of the proper parties; but the defense could also be made by them at law.

APPEAL from the Chancery Court of Choctaw.

Heard before the Hon. A. W. DILLARD.

[Johnson v. Murphy, Agnew & Co.]

The bill in this case was filed on the 20th December, 1873, by John M. Johnson and his three sisters, F. A. Johnson, A. H. Johnson, and E. P. Johnson, against the persons composing the firm of Murphy, Agnew & Co., commission-merchants in the city of Mobile; and sought to enjoin a sale of certain lands under a power contained in a mortgage, and to have the mortgage declared null and void, and cancelled under the decree of the court, as a cloud on the complainants' title to the lands. The mortgage, a copy of which was made an exhibit to the bill, and which was dated the 31st March, 1873, was in these words: "Know all men by these presents, that the note of even date with this *date*, to Murphy, Agnew Co., for the sum of $902.25, and payable on the first day of December, A. D. 1873, was given for advances obtained by them from Murphy, Agnew & Co. *bona fide* for the purpose of making a crop, and that without such advances it would not be in our power to procure the necessary teams, provisions, labor, and farming utensils to make a crop; and we also hereby declare, that said advances, or the amount thereof, shall be a lien on our crop of corn and cotton grown on our plantation in Choctaw county, Alabama, this year, in accordance with the act of the legislature of Alabama approved January 15, 1866. In consideration of said advances, and further to secure the payment of the note above specified, according to the tenor and effect thereof, we do hereby also bargain, sell and convey to the said Murphy, Agnew & Co. the following personal property, to-wit: our entire crop of cotton and corn as aforesaid, and the following described real estate, to-wit: all of section thirty-two (32), township fifteen (15), range one (1) west; and if said note is not paid at maturity, the said Murphy, Agnew & Co. are hereby authorized to take the said personal property into their possession, and to sell the same at usual commissions of two and one-half per cent.; and the real estate to be sold, first giving at least thirty days' notice of the time and place of said sale, by posting notices at three public places in said county, and apply the proceeds of said sale to the payment of said note; upon the condition, nevertheless, that if said note is paid at maturity, this conveyance of said last-mentioned personal property is to be void and of no effect. In further consideration of the premises, we hereby promise and agree to ship our entire crop of cotton and [corn] raised this year, as above specified, to the said Murphy, Agnew & Co., cotton factors in Mobile, Alabama, to be sold by them at the usual commission of two and one-half per cent. Given under our hands," etc.

The names of all the complainants were signed to this

(19)

mortgage, and their seals affixed; and appended to it was the certificate of a justice of the peace, also dated the 31st March, 1873, that the grantors, personally known to him, appeared before him on that day, and acknowledged their execution of the deed. The bill alleged, that the names were in fact all signed by the said John M. Johnson, without any authority from his co-complainants, and that he alone acknowledged it before the justice of the peace; that he was induced to execute the mortgage by the promise of George Agnew, a member of said firm, that said Murphy, Agnew & Co. would make further advances, and furnish sufficient supplies to enable him to cultivate a crop and carry on his farming operations during the year 1873; that this promise they failed to perform, and refused to make any advances whatever after the execution of the mortgage; that the mortgage was thus fraudulently obtained, and was null and void in equity. The defendants answered the bill, and admitted that the names of all the grantors were signed to the mortgage by John M. Johnson; but they alleged that said Johnson, at the time of its execution, represented that he had full authority to sign his sisters' names, and that he in fact was authorized by them to sign their names, and that they approved and ratified all that he had done, and never raised any objection to the validity of the mortgage until after the property was advertised for sale under it. They denied that they had promised to make any further advances, or that the mortgage was given in consideration of any such promise on their part; and alleged that the note and mortgage were given for an existing and acknowledged indebtedness, and to procure an extension of the time of payment thereof. They filed a cross-bill, also, in which they alleged that, by mistake of the justice of the peace by whom it was written, the mortgage purported to be given for advances and supplies furnished under the statute, instead of an existing indebtedness simply; and prayed that it might be corrected in this particular, and foreclosed under the decree of the court.

The justice of the peace by whom the mortgage was written, and whose deposition was taken by the complainants, testified as follows: "I drew it [the mortgage] myself. It was given upon the understanding that Murphy, Agnew & Co. would advance to Johnson that year. I don't know how the negotiations began. John M. Johnson and Agnew were present. The ladies were, I suppose, at home, some five miles. The conversation that took place was about this: Agnew and Johnson came to me, and wanted me to draw the mortgage, and stated that it was for advances for the

year. I drew the mortgage, and included all the forties in it. I stated that we must have the ladies in my presence, or the signatures would be worthless. They agreed between themselves that, as Johnson had before then transacted all his sisters' business, they would risk his signing their names then; and Agnew and Johnson both said they were willing to risk it." Again: "Johnson would not give the mortgage for an extension, unless Agnew would advance to him: the advance was the consideration. I took the acknowledgment, upon the express understanding with Agnew that he would risk it, and stated that the signatures were [of] no account without they were present."

On final hearing, on pleadings and proof, the chancellor held—1st, that the alleged representations, or promises, as to future advances, if fully proved, constituted no ground for equitable relief against the mortgage; 2d, that John M. Johnson could not claim any homestead exemption in the mortgaged premises, because the bill contained neither allegations nor prayer for relief as to that matter; 3d, that the mortgage was absolutely void as to the other complainants, but was equally void at law and in equity; 4th, that no relief could be granted to any of the complainants, because John M. Johnson was entitled to none. He therefore dismissed the bill, and his decree is now assigned as error.

BRAGG & THORINGTON, and W. F. GLOVER, for appellant. Under the proof, there can be no doubt that John M. Johnson was induced to execute the mortgage by Agnew's promise to make additional advances, to enable him to make a crop during the year 1873; and there is no pretense that the advances were made. This promise, or representation, amounts to an engagement which a court of equity will compel a party to make good.—Kerr on Fraud and Mistake, 89. As to equitable relief against fraud, see *Kennedy v. Kennedy*, 2 Ala. 571; *Chambers v. Crook*, 42 Ala. 171; *Langdon v. Roane*, 6 Ala. 518; *Thompson v. Lee*, 31 Ala. 292; Story's Equity, §§ 186, 190–93. But, even if John M. Johnson was not entitled to any relief against the mortgage, the right of the other complainants is beyond dispute. As to them, though the mortgage is valid on its face, it is null and void; and they are entitled to have it cancelled, as a cloud on their title to the land.—*Daniel v. Stewart*, and *Lockett v. Hurt*, at the last term. The bill should not have been dismissed, without allowing them an opportunity to amend by striking out the name of John M. Johnson; or, at least, the dismissal should have been without prejudice.—*Knight v. Blanton*, 51 Ala. 333; *Reese v. Kirk*, 29 Ala. 410; *Michan v. Wyatt*, 21 Ala. 813;

*Danforth v. Herbert,* 33 Ala. 497; *Cameron v. Abbott,* 30 Ala. 416; *Harris v. Carter,* 3 Stewart, 233.

W. E. & R. H. CLARKE, with THOS. W. COLEMAN, *contra.* The mortgage was given to secure an existing indebtedness, and to procure an extension of the time of payment; and any promise as to future advances, if proved to have been made, was without consideration.—*Overdeer & Aughinbaugh v. Wiley, Banks & Co.,* 30 Ala. 709. If any injury resulted from the breach of this promise, which is neither proved or alleged, the defendant had an action at law for damages. No equity being shown in favor of John M. Johnson, the bill was properly dismissed.—Cases cited in 1 Brickell's Digest, 750, § 1634.

STONE, J,—The mortgage, which is the foundation of the present proceedings, bears date March 31st, 1873. Hence, the homestead claim of John M. Johnson, if he owned and occupied the premises in controversy, is not governed by the act "to regulate property exempted from sale for the payment of debts," approved April 23d, 1873.—Pamph. Acts, 64. If he is entitled to a homestead exemption, it is to be measured by the constitution of 1868.—*Miller v. Marx,* and *Coleman v. Smith,* at December term, 1876.

2. The bill in the present case was filed in the name of four complainants. So fas as John M. Johnson is concerned, the relief prayed rests on the averment, that his signature to the mortgage was procured by fraudulent representations, or assurances, of Agnew, one of the mortgagees. The exact averment is, that Agnew agreed, if the mortgage were made, he would advance to the said Johnson supplies to enable him to make a crop for the year 1873 : that the mortgage was executed in consideration of this assurance, and that Murphy, Agnew & Co. had failed to furnish the promised supplies. There is no averment that complainant lost any thing by such failure, or that he was put to additional expense or inconvenience in procuring necessary supplies to enable him to make a crop. This, at most, amounted to a mere breach of agreement, which might, possibly, support an action at law, or sustain a plea of set-off, to the extent of the injury actually sustained. In the form in which it is here pleaded, it does not sustain the bill, so far as this complainant is concerned.—See *Overdeer v. Wiley, Banks & Co.,* 30 Ala. 709. It results that the bill was rightly dismissed, so far as John M. Johnson complained.

3. When several complainants unite in one bill, it is not enough that one or more may be entitled to recover. All must be entitled to relief, else none can obtain it.—1 Brick.

[Bickley v. Keenan & Co.]

Dig. 750, §§ 1634–5–6. This is fatal to the present bill, in its present form, whether the female complainants have made a case for equitable interference or not.

We need not inquire what would be our ruling, if a motion had been made in the court below to amend the bill by striking out the name of John M. Johnson as a complainant. No such motion is shown to have been made.

4. The mortgage, although shown in the proof, and substantially admitted in the pleadings, to have been signed only by John M. Johnson, and not by his sisters, nor by "some other person thereunto lawfully authorized in writing" (Code of 1876, § 2121), nevertheless has a certificate of a justice of the peace attached to it, certifying the acknowledgment of the execution of the conveyance by all the persons whose names are attached to it, strictly according to the statute.—Code of 1876, § 2158. As we understand the testimony, this acknowledgment was not in fact made by the female complainants. We are not prepared to say this does not create such a cloud on the title, as that chancery would entertain a bill to remove it, if only the proper parties were complainants.—*Lockett v. Hurt,* at December term, 1876. But the defense could also be made at law.

We need scarcely say that a certificate of acknowledgment of a conveyance, such as the mortgage in the present record, is a purely official act, and should never be given, in any case, unless it speaks the exact truth.

The decree of the chancellor is so far amended, as to make it a dismissal without prejudice; and, as amended, affirmed.